**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTA RENEE WILLARD, and as successor in interest on behalf of the Estate of Douglas Eugene Willard,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al,<br>        Defendants. | Case No.: 1:14-cv-0760-BAM<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

On October 8, 2014, Defendants California Department of Corrections and Rehabilitation ("CDCR") and individual defendants Diaz, Gipson, Perez and Stainer ("Individual Defendants") filed a motion to dismiss pursuant to Rule 12(b)(6).  CDCR contends that it is immune from liability.  The Individual Defendants contend that Plaintiffs' conclusory allegations do not state a claim under 42 U.S.C. §1983.  The Individual Defendants also contend Plaintiffs cannot state a claim for Assault or for Negligent Infliction of Emotional Distress.  Plaintiffs failed to file a timely opposition to the motion and this Court took the motion under submission pursuant to Local Rule 230(c).  (Doc. 26.) Thereafter, Plaintiffs filed an opposition and the Court issued an Order to Show Cause for the

1

untimely filing.  (Doc. 27.)  The response to the Order to Show Cause was untimely.[1]  (Doc. 29.)  The parties have consented to the Magistrate Judge jurisdiction in this case.  (Doc. 14, 15.)  Having considered the moving, opposition (in part), and reply papers, and the entire file, the Court rules as follows.

## FACTUAL BACKGROUND

Krista Renee Willard is the daughter of Douglas Eugene Willard ("Willard"), who was killed while incarcerated in a Corcoran State Prison, a CDCR facility.[2]  Willard was housed in a cell on May 23, 2013 with inmate Allen Eugene Queen. (Doc. 3, Complaint ¶18.)  Willard was found lying unresponsive in his cell at about 8:30 p.m. and was later pronounced dead.  Willard was 63 years of age, disabled, and at the time of the incident was serving a 6-year sentence.  (Complaint ¶20.)  He had served 4 of his 6 years sentence.  Queen was 48 years of age, and at the time of the incident, was serving 259 years for several convictions from San Joaquin County, including attempted murder of a government officer, possession of a weapon by a prisoner, assault with a deadly weapon on a custody officer and making terrorist threats. (Complaint ¶21.)  Plaintiffs allege Queen was a known violent inmate with a propensity for violence and mental instability. (Complaint ¶21.)  Plaintiffs allege that no correctional officer intervened or attempted to intervene in the attack by Queen.  Plaintiffs do not allege that any of the Individual Defendants knew of the attack and failed to intervene.

Plaintiffs allege Willard suffered from COPD, hearing loss, visual impairment, and a disabled leg, a medical condition which left his leg weak and practically useless. This condition not only affected his balance but left Willard incapable of defending himself against a physical attack.  Willard's particular vulnerability was known by defendants prior to May 23, 2013.  (Complaint ¶22.)

Plaintiffs bring suit against the CDCR and the Individual Defendants, who hold supervisory positions within CDCR.  Plaintiffs allege Michael Stainer, the Director of the CDCR, was responsible

---

[1] Plaintiffs ask for the court to grant an extension of time to have the opposition considered, as further argued in Plaintiffs' papers.  The Court considers, in part, the opposition, and only as noted *infra*.  There is no prejudice to plaintiff for not considering in full the opposition as plaintiffs will be given leave to amend.  Counsel is ADMONISHED that failure to comply with this Court's rules or orders will result in sanctions up to and including dismissal of this action.

[2] Krista Renee Willard brings this action individually and as the successor interest to the estate of Willard.  Plaintiffs' dual capacities will be referred to collectively as "Plaintiffs."

for the administration and application of statewide CDCR policies.  Plaintiffs allege Stainer was and is ultimately responsible for the operation of all of California's prison facilities, including staff employment and training, and the preparation, selection and implementation of policies, procedure and guidelines concerning the use of force, inmate safety, and inmate classification procedures. (Complaint ¶ 8-9.)  Plaintiffs name Defendant Ralph Diaz, Associate Director of High Security Inmates for CDCR, who is responsible for the policies and practices of inmate safety and inmate classification.  (Complaint ¶10.)  Defendant Connie Gipson is the Warden of Corcoran and responsible for the daily operation of the prison.  (Complaint ¶11.)  Defendant Tim Perez is the Chief Deputy Warden of Corcoran and is responsible for the daily operations of the prison and supervision of prison staff. (Complaint ¶12.)  Plaintiffs also name Does 1-30 as defendants.  Plaintiffs allege that the decision to allow inmate Queen to double cell with decedent was made by defendant DOES 1 through 10, who had been trained in policies and procedures regarding CDCR's double cell housing policy. (Complaint ¶ 23.)

Plaintiffs allege the following claims for relief:

1.  First Claim: Violation of 42 U.S.C. §1983 for Failure to Protect under the Eighth Amendment and Fourteenth Amendment;

2.  Second Claim: Violation of 42 U.S.C. §1983 for Failure to Train, Supervise and Discipline employees;

3.  Third Claim: Violation of 42 U.S.C. §1983 for Denial of Family Rights under the Fourteenth Amendment;

4.  Fourth Claim: Assault;

5.  Fifth Claim: Wrongful Death;

6.  Sixth Claim: Negligent Supervision, Training, Hiring and Retention; and

7.  Seventh Claim: Intentional and Negligent Infliction of Emotional Distress.

(Doc. 2.)  All claims appear to be alleged against each defendant.

## DISCUSSION

### A.  Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim is brought under Federal Rule of Civil Procedure Rule 12(b)(6) and may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008.

When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008), *cert. denied*, 556 U.S. 1235 (2009); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.

///

///

///

**B. Immunity of the CDCR**

    **1. Eleventh Amendment Immunity**

Plaintiffs name CDCR as a defendant in each claim for relief.  However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state.  *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted).  While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," *Wolfson*, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought.  *E.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900 (1984); *Buckwalter v. Nevada Bd. of Medical Examiners*, 678 F.3d 737, 740 n.1 (9th Cir. 2012).

The CDCR is a state entity.  Thus, Plaintiffs may not maintain a claim against CDCR.

    **2. Immunity under California Statutes**

Defendant CDCR argues that it is immune under California Government Code section 844.6(a)(2) for the state law based claims for relief.  (Doc. 20-1, p.4.)

Public entities in California are not liable for tortious injury unless liability is imposed by statute. Gov. Code § 815. "[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." *Cochran v. Herzog Engraving Co.,* 155 Cal.App.3d 405, 409, 205 Cal.Rptr. 1 (1984). Section 844.6, subdivision (a)(2) establishes the State's immunity to liability for injuries to prisoners.  Section 844.6 states in relevant part: "a public entity is not liable for: (1) An injury proximately caused by any prisoner; (2) An injury to any prisoner." *Accord Reed v. County of Santa Cruz,* 37 Cal.App.4th 1274, 44 Cal.Rptr.2d 149 (1995) (Person who is lawfully confined in correctional facility pursuant to penal processes is "prisoner" as a matter of law within meaning of governmental immunity statute protecting county from liability for injuries caused by or to prisoners.)

Plaintiffs acknowledge that CDCR is immune from suit and should be dismissed.  (Doc. 27, p. 4.)  Accordingly, CDCR will be dismissed from this action with prejudice.

///

///

## C.  Liability under Section 1983

Plaintiffs' First, Second, and Third claims are brought against the Individual Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law.  *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009), *cert. denied*, 559 U.S. 1025 (2010); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

### 1.  Supervisory Liability of the Individual Defendants under Section 1983

Each of Plaintiffs' three Section 1983 claims against the Individual Defendants is based upon supervisor liability.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) ("the term 'supervisory liability' is a misnomer," since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Thus, a supervisor's participation can include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

With these principles in mind, the Court sets out the legal standards for each claim for relief under Section 1983.

### 2.  First Claim: Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted).  Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833-34 (quotation marks omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841 (quotations omitted); *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *E.g.*, *Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

### 3.  Second Claim: Failure to Train

To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992). A "failure to train" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton*, 489 U.S. at 387–90.  However, "[t]he cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed." *Wardell v. Nollette*, No. C05–0741RSL, 2006 WL

1075220, at *3 (W.D.Wash. Apr.20, 2006) (collecting cases); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (to impose liability for supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation") (citation, internal quotation marks omitted); *Doe v. City of San Diego*, —— F.Supp.2d ——, 2014 WL 3893045, at *11 (Mar. 27, 2014) (plaintiff generally cannot demonstrate supervisor's deliberate indifference by pointing to single incident). For liability to attach in this circumstance, Plaintiffs must show that the training of the subordinate was inadequate and that the inadequacy of the training was the result of a deliberate or conscious choice on the part of the Individual Defendants. *Id.* at 1214. Also, the identified training deficiency must be causally connected to the ultimate injury. *City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In other words, to impose liability, Plaintiff is required to show that the inadequate training actually caused the constitutional violation and that the violation would have been avoided had the employees been properly trained. *Id.* at 389–91.

### 4.   **Fourteenth Amendment Familial Relationship**

Plaintiffs allege that the Fourteenth Amendment rights to familial companionship were violated by the policies adopted by the Individual Defendants which did not protect Willard. The due process claim protects the right to familial relations between family members. See, e.g., *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ....") (citing *Meyer v. Nebraksa*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, only official conduct that "shocks the conscience" is cognizable as a due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Rochin v. Cal.*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). The threshold question in such cases is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8. The type of conduct which is most likely to rise to the "conscience-shocking level" is "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849. Conduct which was not intentional, but rather was deliberately

indifferent, may nevertheless rise to the conscience-shocking level in some circumstances. *Id.* at 849–50.

### 5.  Inadequate Factual Allegations as to the Section 1983 Claims

The complaint fails to allege sufficient facts as to each defendant for either "direct" liability or supervisory liability. Each of the claims for relief against the Individual Defendants suffers from the same factually deficient allegations, and therefore the Court addresses them jointly.

#### (a)  Inadequate Factual Allegations of "Participated In" Liability

The allegations fail to state a claim that the Individual Defendants "participated in or directed the violations." *Taylor,* 880 F.2d at 1045.  Plaintiffs allege that Defendants Stainer, Diaz, Gipson, and Perez had mandatory duties to prevent harm to Willard.  Plaintiffs alleges, based upon Queen's violent history, the Individual Defendants knew or should have known that that Queen would inflict acts of physical violence upon Willard which would result in Willard's death should Queen be allowed to cell with Willard.  (Complaint ¶31.)  Plaintiffs allege that the individual defendants "failed to provide training, supervision, discipline regarding protection of the physical safety of inmates," (Complaint ¶38); "were in a position to stop the actions of Queen in that they should have intervened and prevented Queen's brutal murder of Willard,"  (*Id.* at ¶39); "were in a position to ensure that correctional staff intervened to prevent the strangulation,"  (*Id.* at ¶40); "deliberately placed [Willard] in the same cell with Queen knowing Willard's physical safety was in serious danger." (*Id.* at ¶41.) Plaintiffs allege the Individual Defendants "failed to train and supervise Corcoran State Prison personnel regarding CDCR policies and procedures," (*Id.* at ¶46) "failed to adequately supervise personnel as to their duties and obligations under law, policy and practice,"  (*Id.* at ¶46); "knew that failure to train and supervise would cause injury and or death," (*Id.* at ¶48); "failed to provide policies and procedures to provide for the meaningful reporting, monitoring and investigation," (¶49), among other similar allegations.

The complaint is devoid of specific factual allegations showing the defendants' participation in or directed the deprivation of plaintiff's rights.  Plaintiffs' conclusory allegations say, basically, that the Individual Defendants had a duty to Willard and harm resulted.  Conclusory allegations are

insufficient.  For instance, Plaintiffs cannot allege, in a conclusory fashion, that these defendants knew of the danger of the cell assignment without alleging factual support that each defendant knew of the danger presented by inmate Queen and deliberately disregarded the risk.  The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988).

In this case, plaintiffs have not alleged any facts which support a claim that the Individual Defendants acted with deliberate indifference toward Willard or engaged in conduct that can be characterized as conscience shocking. The allegations fail to state a claim that the Individual Defendants "participated in or directed the violations."

### (b) Inadequate Factual Allegations Regarding A Deficient Policy

Plaintiffs allege that the Individual Defendants were responsible for implementing policies that resulted in Willard's death.  Plaintiffs' complaint contains numerous paragraphs alleging harm from the "policies" or "practices" adopted by the Individual Defendants. Plaintiffs allege conclusory allegations that the Individual Defendants implemented deficient policies which resulted in Willard's death. For instance, Plaintiff alleges the following as to the policies adopted:

> 35. Plaintiffs allege the policies and practices of Stainer, Diaz, Gipson, Perez, and Does 1 through 30 with respect to inmate safety were so lax as to show an intent to inflict unnecessary and wanton pain, in violation of the Eighth Amendment of the United States Constitution.

> 36. Plaintiffs further allege that it is the policy and practice of all defendants, promulgated by the administrative defendants and practiced by the correctional defendants, to deliberately cultivate an environment of intimidation, fear and violence among inmates. It was this environment which led to the unnecessary death of Douglas Eugene Willard, by another inmate without any intervention of defendants. (Complaint ¶35-36.)

Other allegations in the complaint are equally devoid of facts:  failed to adequately train, supervise, discipline, or in any other way control all subordinate defendant; knowingly and deliberately fostered, maintained and condoned policies, practices and customs, or otherwise acted in a manner that was

deliberately indifferent to the plaintiff's constitutional rights, and such policies, practices and customs and/or actions were a direct cause of the violations of plaintiffs' constitutional rights. [3]

Plaintiffs have failed to allege any specific facts that would subject these defendants to liability. Plaintiff does not allege what the policy is, how it is deficient or how the deficient policy was the moving force behind the injury.  To be liable, the official must "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Hansen v Black*, 885 F.2d 642, 646 (9th Cir. 1989). A "moving force" is defined as a requisite causal connection between the policy and the constitutional deprivation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir.2008) ("In other words, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'")

Even if the Individual Defendants were responsible for implementing a policy for cell designations, such a practice could not be said to be the "moving force" behind the alleged constitutional violation. And here, where the deficient policy is perhaps best framed as the failure to find out that Queen's violent tendencies against inmates increased risk of being placed with such an inmate, the Court cannot find the requisite causal connection to establish liability based on a deficient policy. Unlike in *Starr*, Plaintiffs have not pled that Individual Defendants received notice of assaults **against inmates** by Queen and were deliberately indifferent despite the notification.  Plaintiffs merely allege that Queen had a prior violent history (Complaint ¶21), but none of it directed at other inmates. Such factually devoid allegations do not place the Individual Defendants on notice of that Queen had violent propensity towards inmates.  At best, the allegations demonstrate that prison is a violent and unpredictable place.  This does not create constitutional liability.  Although Plaintiffs allege some unnamed deficient policy led to Willard's harm, Plaintiffs establish neither a causal connection between Defendants and the implementation of the policy, nor a causal connection between the policy

---

[3] These types of factually devoid allegations do not withstand the test of *Iqbal* and *Twombly*.  The Court declines to expend its already taxed resources to parse out more specifically the deficiencies of particular allegations, given the common generalized and conclusory allegations.

and the harm to Plaintiff.  Indeed, Plaintiffs "lump" all Individual Defendants together without delineating a factual basis for each Individual Defendant's potential liability.  *See Iqbal*, 556 U.S. at 677 ("each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct").

Vague and conclusory allegations of civil rights violations are not sufficient to withstand a motion to dismiss. Plaintiffs have recited the elements of a claim for supervisory liability, but have failed to allege facts to support the claim.  "[B]are assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim, for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth." *Moss v.U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Here, the allegations of the Complaint are insufficient to state a claim against the Individual Defendants. Unlike the plaintiff in *Starr*, who alleged specific instances in which defendant Los Angeles County Sheriff was on notice of inmate deaths and injuries, in the instant action, Plaintiffs have not established any such direct causal connection that the Individual Defendants were on notice about Queen's conduct.  Plaintiff's Complaint is based on conclusory and generalized allegations without any specific facts regarding Individual Defendant's deliberate indifference for protection, training and supervising subordinates, and any specific policy at issue, or any specific factual allegations that they had notice of any prior injuries or conduct by Queen.  All of the claims against the Individual Defendants are supported by the same sort of conclusory allegations.  Accordingly, the motion to dismiss will be granted.

**D.  Assault**

Plaintiffs allege that the unjustified and penologically unnecessary injury to Willard constituted an intentional assault.

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 240, 242.  For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or

offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm.  *Carlsen v. Koivumaki,* 227 Cal.App.4th 879, 890,174 Cal.Rptr.3d 339 (2014).

Plaintiffs have not alleged facts to support a claim for assault.  Plaintiffs have not alleged that any of the Individual Defendants made an unlawful attempt, coupled with the present ability, to commit an injury on Willard.[4]  Accordingly, this claim will be dismissed without leave to amend.

**E.  Negligent Infliction of Emotional Distress**

The seventh claim for relief alleges both negligent and intentional infliction of emotional distress.  Defendants argue that the negligent infliction of emotional distress claim cannot survive because plaintiffs were neither a "direct victim" nor a "bystander" to the wrongful conduct.  *See Ochoa v. Superior Court*, 39 Cal. 3d 159, 172-73 (1985) (plaintiff could not seek recovery as a direct victim but could as a bystander).  Plaintiffs concur in defendants' argument and therefore the claims for negligent infliction of emotional distress claim will be dismissed without leave to amend.

**F.  Doe Defendants**

Plaintiffs have named numerous Doe defendants.  The inclusion of Doe defendants under these circumstances is permissible, as plaintiffs may amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure once the identity of defendants is known through discovery or other means. *Merritt v. Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989); *see Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543, 547 (D. Nev. 1981).

**G.  Amendment**

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  Plaintiffs will be permitted the opportunity to file an amended complaint clarifying the factual bases for liability against each named defendant.

---

[4] In Plaintiffs' late opposition, Plaintiffs argue that "the direct perpetrator of an assault is not the only person liable for the tort."  Doc. 27, p.10. The Court does not consider the late opposition, and even if it did, Plaintiffs provide no authority for their argument and therefore the Court declines to evaluate this argument.

## **ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and the Court ORDERS as follows:

1.  Defendant California Department of Corrections and Rehabilitation is DISMISSED WITH PREJUDICE;

2.  Plaintiffs' First, Second and Third Claims for Relief under Section 1983 are DISMISSED with leave to AMEND;

3.  Plaintiffs' Fourth Claim for Relief for Assault is DISMISSED WITHOUT LEAVE TO AMEND;

4.  Plaintiffs' Seventh Claim for Relief (for Negligent Infliction of Emotional Distress, only)  is DISMISSED WITHOUT LEAVE TO AMEND;

5.  Plaintiffs shall file an amended complaint within thirty (30) days of from the date of service of this Order;

6.  Failure to amend within this time frame will result in dismissal of this action.

IT IS SO ORDERED.

Dated:   **December 5, 2014**          /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE

14