UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA RENEE WILLARD, and as successor in interest on behalf of the Estate of Douglas Eugene Willard,<br><br>        Plaintiff,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al,<br><br>        Defendants. | Case No.: 1:14-cv-0760-BAM<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |

By motion filed on January 13, 2015, Defendants Diaz, Gipson, Perez, and Stainer moved to dismiss Plaintiffs' first amended complaint pursuant to Fed.R.Civ.P 12(b)(6). Plaintiffs failed to file a timely opposition to the motion, and this Court took the motion under submission pursuant to Local Rule 230(c). (Doc. 26.) Thereafter, Plaintiffs filed an untimely opposition on February 3, 2015. No reply papers were filed. The parties have consented to the Magistrate Judge jurisdiction in this case. (Doc. 14, 15.) Having considered the moving and opposition (in part), and the entire file, the Court rules as follows.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Krista Renee Willard is the daughter of Douglas Eugene Willard ("Willard"), who was killed by his cellmate, Allen Queen, while incarcerated in a Corcoran State Prison, a California Department of Corrections and Rehabilitation ("CDCR") facility. (Doc. 32, FAC ¶¶ 6, 31.) Defendants are supervisory personal of the CDCR. Defendant Michael Stainer is the Director of CDCR and is responsible for the administration application of CDCR policies. (Doc. 32, FAC ¶7.) Plaintiffs allege Stainer was and is ultimately responsible for the operation of all of California's prison facilities, including staff employment and training, and the preparation, selection and implementation of policies, procedure and guidelines concerning the use of force, inmate safety, and inmate classification procedures. (Doc. 32, FAC ¶ 8.)

Plaintiffs name Defendant Ralph Diaz, Associate Director of High Security Inmates for CDCR, who is responsible for the policies and practices of inmate safety and inmate classification. (Doc.32 ¶9.) Defendant Connie Gipson is the Warden of Corcoran and responsible for the daily operation of the prison. (Doc. 32, FAC ¶10.) Defendant Tim Perez is the Chief Deputy Warden of Corcoran and is responsible for the daily operations of the prison and supervision of prison staff. (Doc. 32, FAC ¶11.) Plaintiffs also name DOES defendants 1-30. Plaintiffs allege that the decision to allow inmate Queen to double cell with decedent was made by defendant DOES 1 through 10, who had been trained in policies and procedures regarding CDCR's double cell housing policy. (Doc. 32, FAC ¶ 22.) DOES 11-20 were assigned as control booth or floor officers and failed to intervene. (Doc. 32, ¶23.) DOES 1-30 negligently or intentionally provided Queen with information about Willard's commitment offense. (Doc. 32 FAC ¶34.)

### B. Overview of the Facts

Willard, who had served 4 years of a 6 year term as a sex offender, was housed in a cell on May 23, 2013 with inmate Allen Eugene Queen. (Doc. 32, FAC ¶17.) Willard was found lying unresponsive in his cell at about 8:30 p.m. and was later pronounced dead. Willard was 63 years of age, disabled, and at the time of the incident was serving a 6-year sentence. (Doc. 32, FAC ¶28-29.)

Queen was 48 years of age, and at the time of the incident, was serving 259 years for several convictions from San Joaquin County, including attempted murder of a government officer, possession of a weapon by a prisoner, assault with a deadly weapon on a custody officer and making terrorist threats. (Doc. 32, FAC ¶20.)  Plaintiffs allege Queen was a known violent inmate with a propensity for violence and mental instability. (Doc. 32, FAC ¶20.)  Plaintiffs allege that no correctional officer intervened or attempted to intervene in the attack by Queen.

Plaintiffs allege that prior incidents occurred where sex offender inmates were killed by other inmates, including their cellmates.  (Doc. 32, ¶25-29.)  Plaintiffs allege that Queen learned of Willard's commitment offense, when he was given a Form 128, confronted Willard and intentionally murdered Willard.  (Doc. 32, FAC ¶31.)  Plaintiffs allege that Defendants Stainer, Diaz, Gibson, and Perez were aware of the need to keep a sex offender's commitment offense from being included in his cellmate's Form 128 for the protection of the sex offender. (Doc. 32, FAC ¶ 35.) Although aware of the inherent danger to the sex offender, these Defendants knowingly allowed the practice of including a sex offender's information to be contained in their cellmates Form 128. (Doc. 32, FAC ¶ 35.)

Following leave to amend the complaint after Defendants' prior motion to dismiss (Doc. 31), Plaintiffs filed the FAC.  The FAC alleges the following claims for relief:

1. First Claim: Violation of 42 U.S.C. §1983 for Failure to Protect under the Eighth Amendment and Fourteenth Amendment against all defendants;
2. Second Claim: Violation of 42 U.S.C. §1983 for Failure to Train, Supervise and Discipline employees against all defendants;
3. Third Claim: Violation of 42 U.S.C. §1983 for Denial of Family Rights under the Fourteenth Amendment against all defendants;
4. Fourth Claim: Wrongful Death against all defendants;
5. Fifth Claim: Negligent Supervision, Training, Hiring and Retention against all defendants.

**C. Defendants' Arguments**

Defendants challenge the First through Third claims of violation of §1983.  Defendants argue that the FAC alleges conclusory allegations despite the additional new allegations - that sex offender

3

inmates are targets of other inmates, and that sex offender inmates are sometimes killed by their cellmates, that Willard was killed by his cellmate after the cellmate learned Willard was a sex offender. Plaintiffs fail to allege that Defendants knew of his housing assignment or a risk to Willard's safety as a result to that assignment. (Doc. 34-1 p.2.) Defendants further argue that the allegations do not separate out each defendant and identify what each defendant did, but merely refers to them collectively as "defendants." (Doc. 34-1, p. 6.) Defendants argue that the allegations are conclusory, without factual support such as "defendants" "knew or should have known that Queen would inflict acts of physical violence" (FAC ¶ 49), "failed to provide training, supervision, [and] discipline regarding protection of the physical safety of inmates" (FAC ¶56), failed to enforce laws (FAC ¶72.) Defendants argue that allegations that defendants "should have known" of conduct is insufficient because if Defendants did not know of the alleged condition, but merely should have known, they cannot be held liable for Plaintiffs' claimed constitutional violations. (Doc. 34-1 p. 6.) Plaintiff's allegations of negligence are insufficient to maintain a §1983 claim.

For the failure to protect claim, Defendants argue that Plaintiffs do not allege Stainer, Gipson, Perez, or Diaz were personally involved in housing, cellmate decisions, or assignments. Plaintiffs do not allege a deficient policy. (Doc. 34-1 p.8.) As to the failure to train claim, Defendant argues that the allegations are insufficient because they amount to negligence allegations. (Doc. 34-1 p.9.) There are no allegations that the named defendants participated in or directed any alleged constitution violation or failed to prevent them. On the claim for deprivation of rights to family relations, Defendants argue that Plaintiffs fail to allege any facts showing that the defendants acted with such abuse of power as to shock the conscience. (Doc. 34-1 p.10.)

Defendants argue that the defects in original complaint are not cured because they fail to show that any Defendants knew of Willard's housing assignment or any risk to his safety from his cell assignment, or that any Defendant participated or directed the alleged constitutional violations that resulted in Willard's death. (Doc.34-1 p.2.)

### D. Plaintiffs' Arguments

Plaintiffs argue that that the allegations in the FAC are sufficient to withstand a challenge pursuant to *Twomby* and *Iqbal*. Plaintiffs argue that the facts allege that each of the defendants, particularly Gipson and Perez: "1) were aware of the fact that sex offender status of Corcoran State prison inmate were being intentionally or negligently released to other inmates with the knowledge that such would affect the health and welfare of the sex offender inmate, and 2) were aware that sex offender inmate, who are known targets of violence by fellow inmates, were being improperly double celled with inmate that posed immediate threat of great body injury or death." (Doc. 36 p.3.) Plaintiffs argue that paragraphs 25-43 state facts regarding each named defendants, that they were in a position to be "well aware that sex offenders are known targets" because in the months leading to the incident, a large number of sex offender inmates were killed at the hands of their cellmates. (Doc. 36 p. 4.) Plaintiffs argue it was a "pervasive problem" at CDCR and defendants "failed to act to address the problems that allowed such attacks to occur – namely the failure to train, supervise, and discipline employees." (Doc. 36 p.4-5.)

Plaintiffs argue that they have alleged sufficient facts for the state law claims to proceed and that defendants do not challenge these claims. (Doc. 36 p.6.) Plaintiff asks that if the Court finds the allegations deficient, Plaintiffs be granted leave to amend.

## DISCUSSION

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim is brought under Federal Rule of Civil Procedure Rule 12(b)(6) and may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

5

When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008), *cert. denied*, 556 U.S. 1235 (2009); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.

**B. Liability under Section 1983**

Defendants challenge Plaintiffs' First, Second, and Third claims for relief. Plaintiffs' First, Second, and Third claims are brought against the Defendants Diaz, Gipson, Perez, and Stainer pursuant to 42 U.S.C. § 1983. Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009), *cert. denied*, 559 U.S. 1025 (2010); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

### 1. Supervisory Liability of Defendants under Section 1983

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) ("the term 'supervisory liability' is a misnomer," since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Thus, a supervisor's participation can include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d at 1205–06. Supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. *Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Although there is no pure respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.'" *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir.2007) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989)).

"Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)) (internal quotation marks omitted). In advancing such a claim, the plaintiff must show that the subject policy proximately caused the harm. *Crowley*, 734 F.3d at 977 (quoting *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir.2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability ... so long as the policy

proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy."), *cert. denied*, – U.S. –, 134 S.Ct. 70, 187 L.Ed.2d 29, 2013 WL 1808554 (Oct. 7, 2013)). That means establishing that the constitutional injury "in fact occur[ed] pursuant to the policy." *OSU Student Alliance v. Ray*, 699 F.3d at 1076. To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *OSU Student Alliance v. Ray*, 699 F.3d at 1076 ("§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which" causes a constitutional deprivation.)

2. **Linkage Requirement**

There is a linkage requirement under §1983.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988).

With the above principles, the Court turns to each claim for relief.

8

### C. Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.2005). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer,* 511 U.S. at 832-33 (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833-34 (quotation marks omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841 (quotations omitted); *Clem*, 566 F.3d at 1181.

Thus, a prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847 (Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.) "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### D. Second Claim: Failure to Train or Supervise

A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton*, 489 U.S. at 387–90 (A failure to train or supervise may satisfy this criteria if, "in light of the duties assigned to specific officers or employees[,] the need for more or

different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.")  However, "[t]he cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed." *Wardell v. Nollette*, No. C05–0741RSL, 2006 WL 1075220, at *3 (W.D.Wash. Apr.20, 2006) (collecting cases); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (to impose liability for supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation") (citation, internal quotation marks omitted), *cert. denied*, 540 U.S. 826 (2003). Also, the identified training deficiency must be causally connected to the ultimate injury. *City of Canton*, 489 U.S. at 391). In other words, to impose liability, Plaintiffs are required to show that the inadequate training actually caused the constitutional violation and that the violation would have been avoided had the employees been properly trained. *Id.* at 389–91; *See Connick v. Thompson*, – U.S. –, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that actual or constructive notice that a training program is inadequate and a pattern of similar constitutional violations are usually necessary to demonstrate deliberate indifference for purposes of failure to train).

**E. Fourteenth Amendment for violation of Familial Relationship**

Plaintiffs allege that the Fourteenth Amendment rights to familial companionship were violated by the policies adopted by the Defendants Diaz, Gipson, Perez, and Stainer which did not protect Willard. The due process claim protects the right to familial relations between family members. See, e.g., *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ....") (citing *Meyer v. Nebraksa*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, only official conduct that "shocks the conscience" is cognizable as a due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Rochin v. Cal.*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). The threshold question in such cases is "whether the behavior of the governmental officer is so egregious, so outrageous, that it

may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8. The type of conduct which is most likely to rise to the "conscience-shocking level" is "conduct intended to injure in some way unjustifiable by any government interest." *Id*. at 849. Conduct which was not intentional, but rather was deliberately indifferent, may nevertheless rise to the conscience-shocking level in some circumstances. *Id*. at 849–50.

### F. Deficiencies in the FAC

#### 1. No Allegation that Diaz, Gipson, Perez or Stainer Personally Participated

Each of Plaintiffs' three Section 1983 claims against Defendants Diaz, Gipson, Perez, and Stainer is based upon supervisor liability. There are not any allegations that Defendants Diaz, Gipson, Perez, and Stainer participated in or directed any conduct associated with the claims, presumably by placing a known sex offender inmate in a cell with another inmate or by providing cellmate information on Form 128. The allegations do not state that the Defendants assigned or placed Willard in the cell with Queen, gave Queen information, heard the incident or failed to intervene. There are also no allegations that the Defendants Diaz, Gipson, Perez, and Stainer knew of the specific conduct and failed to act. The allegations do not state, and Plaintiffs do not argue, that the Defendants Diaz, Gipson, Perez, and Stainer personally participated in the alleged wrongful conduct. While Plaintiffs argue that the Defendants Diaz, Gipson, Perez, and Stainer "were aware that there was a problem with providing for the safety of sex offender inmates," (FAC ¶38), there are no allegations that Defendants Diaz, Gipson, Perez, and Stainer knew that Willard was a sex offender or knew that he had been placed in a cell with Queen or knew that Queen had been provided with the Form 128. There is no factual allegation that Defendants participated, directed, or oversaw the distribution of the Form 128 form to Queen. Therefore, liability is sought against Defendants Diaz, Gipson, Perez, and Stainer as supervisory personnel.

#### 2. Allegations of Knowledge of and Acquiescence in Unconstitutional Conduct

Each of the §1983 claims require allegations of "deliberate indifference" against each defendant. For a "deliberate indifference" theory of individual liability, the Plaintiffs must allege

11

sufficient facts to plausibly establish the defendant's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. *Starr*, 652 F.3d at 1206–07.

Plaintiff fails to allege facts to support the inference that any of the supervisors took culpable actions-or inaction-in the training, supervision, or control of subordinates or engaged in conduct that showed a reckless or callous indifference to the rights of others. Plaintiff fails to allege the actions taken by the named supervisors. In paragraph 38, Plaintiffs allege:

> From the number of sex offender targeted death at the hands of fellow inmates, predominately from their cellmates, during the time that each named defendant was in their named CDCR position, it is clear that all named defendants were aware that there was a problem with providing for the safety of sex offender inmates, such as Douglas Eugene Willard. In particular, it was clear that sex offenders are frequently attacked and killed by their cellmates, and need protection therefrom. FAC ¶38.

This allegation merely alleges that there was a problem protecting sex offenders in prison. What this paragraph does not factually allege is that Defendants Diaz, Gipson, Perez, or Stainer knew that Willard was a sex offender or had any knowledge, control, or responsibility for Willard's cell assignment or provision of the Form 128. Without that foundational knowledge, defendants could not have "acquiescence" in the subordinates' conduct. Whether Defendants "should have known" of the danger is not enough, because there is no factual basis that they did in fact know. See *Farmer*, 511 U.S. 834 (subjectively, a prison officials must know of and disregard the risk); *Canton*, 489 U.S. at 389 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons."); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir.2010) (recognizing that the subjective component requires a showing that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he ... also dr[e]w the inference").

Plaintiff alleges that Defendants Diaz, Gipson, Perez, and Stainer were "aware" that prisoners needed to be kept safe and that sex offenders were targets of violence. (FAC ¶35). What the FAC does not allege is that Diaz, Gipson, Perez, and Stainer knew of the specifics about Willard (he was a sex offender, where he was housed, etc.) or knew that Forms 128 included Willard's information.

1  *Compare Starr*, 652 F.3d at 1216–17 (reversing dismissal of claim against supervisor defendant sued
2  in his official capacity for attack against inmate involving prison deputies, where plaintiff made
3  "detailed factual allegations that go well beyond reciting the elements of a claim of deliberate
4  indifference ... [by] specifically alleg[ing] numerous incidents in which inmates in Los Angeles
5  County jails have been killed or injured because of the culpable actions of the subordinates of Sheriff
6  Baca[;] ... that Sheriff Baca was given notice of all of these incidents [via weekly reports][;] ... that
7  Sheriff Baca was given notice, in several reports [including DOJ investigative reports], of systematic
8  problems in the county jails under his supervision that have resulted in these deaths and injuries[and
9  entered into an MOU] [;] ... that Sheriff Baca did not take action to protect inmates under his care
10 despite the dangers, created by the actions of his subordinates, of which he had been made aware")
11 with *Hydrick*, 669 F.3d at 941–42 (dismissing Section 1983 claim against supervisors in their
12 individual capacities where "instead of the detailed factual allegations in Starr ... Plaintiffs' complaint
13 is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing
14 by each Defendant").

15 There is no factual allegation that Defendants Diaz, Gipson, Perez, or Stainer knew Queen was
16 violent or knew of the particular cell assignment or knew Willard was a sex offender inmate or knew
17 that Form 128 with Willard's commitment offense was provided to Queen. Indeed, Plaintiffs allege
18 that Defendants DOES 1-10 were responsible for the cell assignments where Willard was housed with
19 Queen:

> The decisions to allow Queen to double cell with Willard were made by defendants
> DOES 1through 10, who had been trained in policies and procedures regarding CDCR's
> double cell housing policy." FAC ¶22.

23 Plaintiffs further allege Defendant DOES 1-30 were responsible for giving out the 128 card: "In
24 providing inmate Queen with the nature of Willard's commitment offense, Does 1 through 30 knew of
25 and disregarded a substantial risk of harm." FAC ¶36.

26 Here, there are not factual allegations that the Defendants Diaz, Gipson, Perez, and Stainer
27 knew their subordinates were giving the Form 128 to cellmates and included sex offender information
28 on the form. Indeed, the allegations imply, and the Court infers, that Willard was housed with Queen

successfully until such time as Queen saw the Form 128.[1] (FAC ¶31 (Queen confronted his cellmate with the Form 128).) There are no factual allegations that there existed a policy of giving cellmates Form 128. The Court finds conclusory the allegation ¶35 which states: "Although aware of the inherent danger to the sex offender . . . these defendants knowingly allowed the practice of including the sex offender's information to be contained in their cellmates Form 128." Since liability is potentially based upon the failure to train or supervise regarding giving Form 128 to cellmates, Plaintiff must specifically allege what each defendant knew and what each defendant did, and not in the conclusory fashion it is currently alleged.

### 3. Policy Promulgated by Defendants Diaz, Gipson, Perez, and Stainer

There is an overall ambiguity in the allegations as to the conduct for which Defendants Defendants Diaz, Gipson, Perez, and Stainer may be liable. Plaintiffs allege that the attack on Willard was precipitated by Queen receiving the Form 128, which indicated Willard's commitment offense. While Plaintiffs allege other sex offender inmates have been killed by cellmates, there are no facts which indicate that any prior act of violence against a sex offender inmate was precipitated due to disclosure of information on the Form 128. Plaintiffs seek to impose liability upon the supervisory personnel for disclosure on the Form 128, but as the allegations currently stand, Plaintiffs seek to impose liability based upon a single factual circumstance. *Doe v. City of San Diego*, – F.Supp.2d –, 2014 WL 3893045, at *11 (Mar. 27, 2014) (plaintiff generally cannot demonstrate supervisor's deliberate indifference by pointing to single incident). Plaintiffs fail to allege that Defendants Diaz, Gipson, Perez, and Stainer either personally promulgated any policy of having sex offender inmates' information on Form 128 or implemented, or in some other way possessed responsibility for the continued operation of the Form 128 policy.

The allegations are ambiguous in light of other allegations that the decision to house Willard with Queen was contrary to CDCR policy. "Despite training [on double cell policy] and without legal justification in complete abrogation of CDCR policies and procedures, defendants DOES 1 through 10

---

[1] A further amended complaint can clarify the facts regarding the housing.

overrode CDCR polices and forced Willard to cell with Queen." (FAC ¶22.) There is no allegation that Defendants Diaz, Gipson, Perez, and Stainer created or promulgated or condoned or acquiesced in abrogating CDCR double cell policy. If Does 1-10 acted contrary to CDCR policies and procedures in housing Willard with Queen, it is not plausible that Defendants Diaz, Gipson, Perez, and Stainer could have been responsible for subsequent conduct regarding Willard's housing, i.e., giving the Form 128 to his cellmate. If Does 1-10 acted contrary to policy, Defendants Diaz, Gipson, Perez, and Stainer could not have created, promulgated, implemented, or in some other way possessed responsibility for the continued operation of a policy of giving Form 128 to sex offender's cellmates. *See Cole v. Sunnyvale*, No. 08–5017–RMW, 2010 WL 532428, at *2 (N.D.Cal. Feb. 9, 2010) ("Where the facts, taken as true, are consistent with the possibility of wrongdoing, but where more likely explanations also arise from those same facts, the allegations do not 'plausibly suggest an entitlement to relief' and are appropriately subject to dismissal under Rule 12(b)(6)."). If that is Plaintiffs' position, there must be a factual allegation that Defendants Diaz, Gipson, Perez, and Stainer specifically knew the Does 1-10 violated the double cell housing policy.

Plaintiffs allege that Gipson and Perez were "aware" of a practice in Corcoran State Prison that the Form 128 contained the sex offenders' information. (FAC ¶35.)[2] But the allegations do not state that the other two defendants, Stainer and Diaz, knew that Form 128 was provided to sex offender inmate cellmates or condoned it or created, promulgated, implemented, or in some other way possessed responsibility for the continued operation of a policy of giving Form 128 to sex offender's cellmates.[3] Plaintiffs allege that "Gipson, Perez and Does 1-30 were aware of this practice at

---

[2] This allegation crosses the line into conclusory. Plaintiffs do not allege upon what facts defendants became "aware." Being aware is based upon factual foundation. *Compare Starr*, 652 F.3d at 1211 (Plaintiffs alleged the sheriff knew of the prior incidents because sheriff received notice by special reports prepared county counsel and the DOJ). The Court will grant leave to amend.

[3] Generally, Plaintiffs again lump defendants all together: Plaintiffs allege "these **defendants** knowingly allowed the practice of including a sex offender's information to be contained in their cellmates' From 128." FAC ¶35 (emphasis added). Plaintiff must allege what each defendant did to violate Willard's constitutional rights. *See Iqbal*, 556 U.S. at 677 ("each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct").

15

Corcoran State Prison, but failed to either act to prevent such information from being disclosed to a sex offender's non-sex offender cellmate, or knowingly allowed such practices." (FAC ¶35.) However, elsewhere, plaintiffs allege that it was policy NOT to double cell sex offender inmates with persons such as Queen. (FAC ¶22.) If CDCR had the policy against certain types of double celling of sex offender inmates, that policy would negate the need for a policy against disclosure of commitment offenses on the Form 128.

There is ambiguity as to what the unconstitutional policy was. The allegations attempt to hold Defendants Diaz, Gipson, Perez and Stainer liable for failure to "safely house" inmate sex offenders (FAC ¶39), but the allegations also state that the wrongful "practice" was giving Form 128 to Queen and that act (giving the form) resulted in Queen killing Willard. (FAC ¶35 ("Defendants Stainer, Diaz, Gipson and Perez, and Does 1 through 30, were aware of the need to keep a sex offender's commitment offense from being including in his cellmates Form 128, for the protection of the sex offender"); ¶39 ("CDCR policies and procedures are supposed to take into account inmate safety,"); ¶40 ("It was within the authority and responsibility of defendants Stainer, Diaz, Gipson, Perez and Does 1-30 to ensure that sex offender inmates under their custody and control were safely housed.") Defendants are entitled to know what policy they are alleged to have created or tolerated or fostered which inflicted constitutional harm on Willard.

Plaintiffs correctly argue that the allegations in ¶¶22-35 provide additional factual information, but the allegations against the Defendants Diaz, Gipson, Perez, and Stainer remain conclusory allegations, generalities, and lumping together that they "knew" or "should have known," without specifying the wrongdoing by each defendant. See *Hydrick v. Hunter,* 669 F.3d at 942 (9th 2012). Defendants are entitled to know the specific policy implemented by each defendant which gives rise to their potential liability. *Id.* Plaintiffs do not set forth factual allegations that Defendants Diaz, Gipson, Perez, and Stainer either personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to the other Defendants' alleged conduct.

### G. Allegations regarding California Regulations and Penal Code

In the FAC, Plaintiffs allege:

¶47 The employees of CDCR are mandated by law, e.g., California Code of Regulations, Title 15, Subchapter 4, Article §§3270-3271, et seq., Penal Code §§ 147, 2650-2652, et seq, CDCR polices, statutes, and the Eight and Fourteenth Amendment to the United States Constitution to safely keep person[s] committed to the care and custody of the Director of Correction.

The Court is uncertain as to the purpose of this allegation and reference to the California Code of Regulation or the Penal Code. Neither provides a private right of action. A private right of action under a criminal statute has rarely been implied. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979): *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir.2006) (no private right of action for violation of criminal statutes), *cert. denied*, 549 U.S. 1231 (2007). Neither provides a standard for claims asserted under the Eighth Amendment or Fourteenth Amendment. In any amendment, Plaintiffs shall clarify these allegations.

### H. Request for Leave to Amend

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). Plaintiffs request leave to amend, and defendants argue that leave should be denied. Plaintiffs will be given a final opportunity to amend.

///
///
///
///
///
///
///
///
///

**ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as follows:

1. Plaintiffs' First, Second, and Third Claims for Relief are DISMISSED with leave to AMEND;
2. Plaintiffs shall file an amended complaint within thirty (30) days of the date of entry of this Order; and
3. Failure to amend within this time frame will result in dismissal of this action.

IT IS SO ORDERED.

Dated:   **March 31, 2015**                         /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE