UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA RENEE WILLARD, and as successor in interest on behalf of the Estate of Douglas Eugene Willard,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-00760-BAM<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT<br><br>(Doc. 39) |

By motion filed on May 12, 2015, Defendants Diaz, Gipson, Perez, and Stainer moved to dismiss Plaintiffs' second amended complaint pursuant to Fed. R. Civ. P 12(b)(6). (Doc. 39.) Plaintiffs opposed the motion on July 5, 2015, and Defendants replied on July 8, 2015. (Docs. 41, 42.) The parties have consented to Magistrate Judge jurisdiction in this case. (Docs. 14, 15.) Having considered the parties' briefing and the entire file, the Court rules as follows.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Parties**

Krista Renee Willard is the daughter of Douglas Eugene Willard ("Willard"), who was killed by his cellmate, Allen Queen, while incarcerated in a Corcoran State Prison, a California Department of Corrections and Rehabilitation ("CDCR") facility. (Doc. 38, SAC ¶¶ 6, 31.) Named Defendants

are supervisory personnel of the CDCR. Defendant Michael Stainer is the Director of CDCR and is responsible for the administration and application of CDCR policies. (Doc. 38, SAC ¶ 8.) Defendant Ralph Diaz is the Associate Director of High Security Inmates for CDCR and is responsible for the policies and practices of inmate safety and inmate classification. (Doc. 38, SAC ¶ 9.) Defendant Connie Gipson is the Warden of Corcoran and is responsible for the daily operation of the prison. (Doc. 38, SAC ¶ 10.) Defendant Tim Perez is the Chief Deputy Warden of Corcoran and is responsible for the daily operations of the prison and supervision of prison staff. (Doc. 38, SAC ¶ 11.)

Plaintiffs also name DOES 1-30. DOES 1 through 10 were assigned as control booth or floor officers and failed to intervene. (Doc. 38, SAC ¶ 23.) Plaintiffs allege that the decision to allow inmate Queen to double cell with Willard was made by defendant DOES 11 through 20, who had been trained in policies and procedures regarding CDCR's double cell housing policy. (Doc. 38, SAC ¶ 22.) DOES 11-20 negligently or intentionally provided Queen with information about Willard's commitment offense. (Doc. 38, SAC ¶ 34.) Defendants Stainer, Diaz, Gipson, Perez and DOES 1-30 were aware of the need to keep a sex offender's commitment offense from being included in his cellmate's Form 128 for the protection of the sex offender. (Doc. 38, SAC ¶ 35.) In providing Queen with the nature of Willard's commitment offense, DOES 11-20 knew of and disregarded a substantial risk of serious harm to Willard in allowing him to continue to be housed with Queen. (Doc. 28, SAC ¶ 36.) DOES 21-30 negligently and carelessly trained, supervised and disciplined Corcoran State Prison personnel, which contributed to Willard's death. (SAC ¶ 64-78.)

**B. Overview of the Facts**

Willard, who had served 4 years of a 6 year term as a sex offender, was housed in a cell on May 23, 2013, with inmate Allen Eugene Queen. (Doc. 38, SAC ¶¶ 17, 19.) Willard was found lying unresponsive in his cell at about 8:30 p.m., and was later pronounced dead. Willard was 63 years of age, disabled, and serving a 6-year sentence. (Doc. 38, SAC ¶ 18-19.) Queen was 48 years of age, and at the time of the incident, serving 259 years for several convictions from San Joaquin County, including attempted murder of a government officer, possession of a weapon by a prisoner, assault with a deadly weapon on a custody officer and making terrorist threats. (Doc. 38, SAC ¶ 20.) Plaintiffs allege Queen was a known violent inmate with a propensity for violence and mental

instability.  (Doc. 38, SAC ¶ 20.)  Plaintiffs allege that no correctional officer intervened or attempted to intervene in the attack by Queen.

Plaintiffs also allege that prior incidents occurred where sex offender inmates were killed by other inmates, including their cellmates.  (Doc. 38, SAC ¶¶ 25-29.)  Plaintiffs allege that Queen learned of Willard's commitment offense, when he was given a Form 128, confronted Willard and intentionally murdered Willard.  (Doc. 38, SAC ¶ 31.)  Plaintiffs allege that Defendants Stainer, Diaz, Gibson, Perez and DOES 1-30 were aware of the need to keep a sex offender's commitment offense from being included in his cellmate's Form 128 for the protection of the sex offender. (Doc. 38, SAC ¶ 35.) Although aware of the inherent danger to the sex offender, these Defendants knowingly allowed the practice of including a sex offender's information to be contained in their cellmates Form 128. (Doc. 38, SAC ¶ 35.)

Following a second opportunity for leave to amend the complaint after Defendants' prior motion to dismiss (Doc. 34), Plaintiffs filed the SAC.  The SAC alleges the following claims for relief:

1. First Claim: Violation of 42 U.S.C. §1983 for Failure to Protect under the Eighth Amendment and Fourteenth Amendment against DOES 1-30;
2. Second Claim: Violation of 42 U.S.C. §1983 for Failure to Train, Supervise and Discipline employees against DOES 21-30;
3. Third Claim: Violation of 42 U.S.C. §1983 for Denial of Family Rights under the Fourteenth Amendment against DOES 1-30;
4. Fourth Claim: Wrongful Death against all defendants;
5. Fifth Claim: Negligent Supervision, Training, Hiring and Retention against all defendants.

**C. Defendants' Arguments**

Defendants challenge the First through Third claims alleging section § 1983 violations. Defendants first argue that Plaintiffs do not assert any §1983 claims against the four named defendants—Diaz, Gipson, Perez and Stainer.  Defendants point out that Plaintiffs assert the same three § 1983 claims and support them with the same allegations as in the first amended complaint.  In the first three causes of action, Plaintiffs replace their prior references to the named defendants with DOE defendants.

1    Defendants further argue that the SAC fails to cure the defects of the first amended complaint
2 because the allegations fail to show that Diaz, Gipson, Perez or Stainer participated in or directed the
3 alleged constitutional violations that resulted in Willard's death, knew of Willard's housing
4 assignment or any risk to his safety from his cell assignment, or promulgated or implemented any
5 policy or practice that put Willard at risk of significant harm.  (Doc. 39-1, p. 2.)
6    Defendants contend that the court should dismiss the § 1983 claims with prejudice and order that
7 the remaining state claims be dismissed without prejudice.

8    **D.  Plaintiffs' Arguments**
9    Plaintiffs admit that they are no longer alleging § 1983 claims against Defendants Diaz, Gipson,
10 Perez and Stainer.  (Doc. 41, pp. 2, 3-4.)  Plaintiffs therefore argue that Defendants' motion to dismiss
11 these three causes of action against them is moot.  (Doc. 42, p. 4.)  Plaintiffs are alleging only state
12 law claims (the Fourth and Fifth causes of action) against Defendants Diaz, Gipson, Perez and Stainer.
13 (Doc. 41, pp. 2, 3-4.)
14    Plaintiffs further argue that if the court feels that a motion to dismiss is still needed with respect to
15 the § 1983 causes of action, such dismissal should not be with prejudice.  Plaintiffs claim that they
16 have been unable to complete discovery, which "could unearth evidence that one or more of the
17 named Defendants did play an active role in the facts alleged by Plaintiff which provide the basis for
18 §1983 causes of action."  (Doc. 41, p. 4.)
19    With respect to the state law claims, Plaintiffs argue that Defendants have provided no legal
20 argument to support dismissal.  Plaintiffs contend that even if Defendants Diaz, Gipson, Perez and
21 Stainer cannot be held liable under § 1983, other CDCR employees or agent can be.  Plaintiffs assert
22 that these employees are not currently known, and will not be known until discovery commences.
23 Plaintiffs argue that even though the exact identities and roles of the DOE defendants are unknown, it
24 is clear that a valid § 1983 claim exists against them and thus the court retains jurisdiction over the
25 state law claims.
26 ///
27 ///
28 ///

4

**E.  Defendants' Reply**

Defendants counter that Plaintiffs failed to cure the defects identified in the first amended complaint, arguing that the allegations that the court found conclusory, ambiguous and contradictory remain in the second amended complaint and militate against permitting Plaintiff to conduct early discovery to identify the DOE defendants.

Defendants argue that Plaintiffs have alleged no facts showing that any defendant gave Queen information about Willard's sex offense, knew of Queen's history of violence, knew that Queen would attack Willard if he learned of Willard's sex offense or failed to intervene to prevent Queen's murder of Willard.  Plaintiffs merely repeat the same allegations from the first amended complaint that all named defendants were aware that there was a problem with providing for the safety of sex offender inmates.  Defendants point out that Plaintiffs allege only one instance—Queen's attack on Willard—in which a sex offender was murdered by his cellmate after disclosing information from the victim's Form 128 of the victim's sex offense.  Defendants believe that the single instance is insufficient to support a deliberate indifference claim.

Defendants further argue that Plaintiffs carried over additional defects without any attempt to cure them and that many of the allegations are conclusory.  Defendants assert that Plaintiffs' § 1983 causes of action do not include any factual allegations showing that anyone personally participated in depriving Willard of any constitutional rights, knew of and acquiesced in unconstitutional conduct by their subordinates, or promulgated or implemented constitutionally deficient policies or procedures.  (Doc. 42, p. 5.)  Defendants also argue that Plaintiffs continue to lump all defendants together, which the court noted in ruling on the motion to dismiss the first amended complaint.

Defendants contend that the Court should not permit early discovery related to the DOE defendants because it is clear that such discovery would not identify the DOES and the complaint should be dismissed on other grounds.  Defendants assert that Plaintiffs have not demonstrated that they are reasonably likely to be able to identify defendants through discovery and have not described any attempts made to locate the DOE defendants.

As a final matter, Defendants contend that if the Court grants the motion and orders dismissal of the § 1983 claims, the Court should decline to exercise jurisdiction over the remaining state law claims and dismiss them without prejudice.

**DISCUSSION**

**A. Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 12(b)(6). A dismissal for failure to state a claim is brought under Federal Rule of Civil Procedure Rule 12(b)(6) and may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008), *cert. denied*, 556 U.S. 1235 (2009); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.

Defendants Diaz, Gipson, Perez and Stainer challenge Plaintiffs' First, Second, and Third claims for relief. However, Plaintiffs' First, Second, and Third claims are brought against DOE defendants only pursuant to 42 U.S.C. § 1983. As Defendants Diaz, Gipson, Perez and Stainer are not named in the First, Second and Third § 1983 causes of action, Defendants' motion to dismiss these claims against them is moot. Therefore, the Court turns to Plaintiffs § 1983 claims against DOES 1-30.

**B. First Claim:  Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.2005). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer,* 511 U.S. at 832-33 (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833-34 (quotation marks omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841 (quotations omitted); *Clem*, 566 F.3d at 1181.

Thus, a prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847 (Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.) "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiffs allege that Does 1-30 failed to protect Willard from harm.  With regard to Does 1 through 10, Plaintiffs allege that these defendants were control booth or floor officers assigned to the unit in which Willard was murdered and "knew or should have been aware had they been properly performing their duties of the attack by Queen on Willard." (SAC ¶ 23.)   Plaintiffs contend it was the duty of Does 1 through 10 "to immediately separate Queen from Willard upon the start of the attack on May 23, 2013." (SAC ¶ 47.)  Plaintiffs further allege that despite their duties to immediately intervene in the attack, "Does 1 through 10 with deliberate indifference failed to do so.  Does 1 through 10[] knew or should've been aware that Queen was attacking Willard in time to intervene, but with deliberate indifference failed to do so." (SAC ¶ 47.)  Plaintiffs further allege that "defendants Does 1 through 10 were in a position to stop the actions of Queen in that they should have intervened and prevented Queen's brutal murder of [Willard], but failed and/or refused to do so. . . ." (SAC ¶ 58.)

Plaintiffs have failed to state a cognizable claim for failure to intervene against Does 1 through 10.  Plaintiffs' factual allegations are conclusory and suggest only that Does 1 through 10 knew or should have known of the attack by Queen on Willard.  This is not the proper standard for deliberate indifference.  Plaintiffs have included no factual allegations demonstrating that Does 1 through 10 knew of Queen's attack on Willard and then failed to intervene.  That they were assigned control booth or floor officers is not sufficient to impute knowledge of the attack and a subsequent failure to intervene.  Nonetheless, the Court finds that these deficiencies may be cured through amendment to add additional facts and Plaintiffs will be granted leave to amend this claim with respect to Does 1 through 10.  *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'").

With regard to Does 11 through 20, Plaintiffs allege that the "decisions to allow Queen to double cell with Willard" were made by these defendants and they "negligently or intentionally provided Queen with information that contained information about Willard's commitment offense." (SAC ¶¶ 22, 34.)  Plaintiffs further allege that these defendants were "personally aware of Queen's propensity for violence as they had access to and had reviewed Queen's file or otherwise were personally aware of Queen's violent history." (SAC ¶ 48.)  Plaintiffs also allege that Does 11 through 20 "knew or should have known that Queen would inflict acts of physical violence upon the person of

8

Willard which would result in Willard's death should Queen be allowed to cell with Willard, and certainly such physical violence was the reasonably foreseeable result of leaving Queen with Willard without supervision or intervention by correctional staff." (SAC ¶ 48.) Plaintiffs additionally allege that Does 11 through 20 "intentionally housed Willard with Queen knowing and anticipating that Queen would in fact maim or kill Willard," and they intentionally violated the double cell policies and procedures because "they knew Willard was a sex offender with expectation that Queen would act to injure or kill Willard." (SAC ¶ 49.) Plaintiffs further allege that Does 11 through 20 intentionally "included information about Willard's commitment offense in Queen's 128 form" and "knew that providing Queen with Willard's commitment information would result in Queen maiming or killing Willard." (SAC ¶ 50.) At the pleading stage, the Court finds that Plaintiffs have stated a cognizable Eighth Amendment claim against DOES 11-20.

With regard to Does 21 through 30, Plaintiffs allege that these defendants "were in a position to ensure that correctional staff intervened to prevent the strangulation death of [Willard] and their inaction "to supervise the building in which [Willard] was placed with Queen, provided Queen the means or opportunity to commit the fatal physical attack upon [Willard], which resulted in death." (SAC ¶¶ 59, 61.)

Plaintiffs have failed to state a cognizable failure to intervene claim against Does 21 through 30 based on their purported roles "supervising" the building where Queen and Willard were housed. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77 ("the term 'supervisory liability' is a misnomer," since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Thus, a supervisor's participation can include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the

complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d at 1205–06. Supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. *Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In this instance, Plaintiffs fail to allege facts demonstrating that Does 21 through 30 directly participated in the violations, acquiesced in the conduct of their subordinates or acted with a reckless or callous indifference to Willard's rights. Plaintiffs do not allege any facts showing that Does 21 through 30 knew that Willard was a sex offender or had any knowledge, control, or responsibility for Willard's cell assignment or provision of the Form 128. There also are no facts demonstrating that Does 21 through 30 knew of any risk to Willard from his housing assignment with Queen. Without that foundational knowledge, defendants could not have acquiesced in any subordinates' conduct or demonstrated a callous disregard for Willard's rights. Whether Defendants "should have known" of the danger is not enough, because there is no factual basis that they did in fact know. *See Farmer*, 511 U.S. 834 (subjectively, prison officials must know of and disregard the risk); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (recognizing that the subjective component requires a showing that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he ... also dr[e]w the inference"). Plaintiffs have been unable to cure these deficiencies despite multiple opportunities to amend the complaint and further leave to amend is not warranted.

### C. Second Claim: Failure to Train or Supervise

A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (A failure to train or supervise may satisfy this criteria if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.") However, "[t]he cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious

choices made with full knowledge that a problem existed." *Wardell v. Nollette*, No. C05–0741RSL, 2006 WL 1075220, at *3 (W.D. Wash. Apr. 20, 2006) (collecting cases); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (to impose liability for supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation") (citation, internal quotation marks omitted), *cert. denied*, 540 U.S. 826 (2003). Also, the identified training deficiency must be causally connected to the ultimate injury. *City of Canton*, 489 U.S. at 391. In other words, to impose liability, Plaintiffs are required to show that the inadequate training actually caused the constitutional violation and that the violation would have been avoided had the employees been properly trained. *Id.* at 389–91; *See Connick v. Thompson*, – U.S. –, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that actual or constructive notice that a training program is inadequate and a pattern of similar constitutional violations are usually necessary to demonstrate deliberate indifference for purposes of failure to train).

Plaintiffs have not cured the deficiencies previously identified by the Court in connection with this cause of action. Plaintiffs have merely substituted Does 21 through 30 in the place and stead of Defendants Diaz, Gipson, Perez, and Stainer. For the same reasons that Plaintiffs failed to state a cognizable claim in the first amended complaint (Doc. 37, pp. 14-16), Plaintiffs' second amended complaint fails to state a cognizable claim based on a purported failure to train, supervise and discipline against Does 21 through 30. Despite multiple opportunities, Plaintiffs have been unable to cure the deficiencies in this claim and further leave to amend is not warranted.

**D. Third Claim: Fourteenth Amendment for Violation of Familial Relationship**

Plaintiffs allege that the supervising and administrative defendants Does 21 through 30 denied her Fourteenth Amendment rights to familial companionship by failing to train, supervise and discipline employees and defendants Does 1 through 20 denied her rights by violating Willard's Eighth Amendment rights. The due process clause protects the right to familial relations between family members. *See,* e.g., *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ....") (citing *Meyer v. Nebraksa*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, only official conduct that "shocks the conscience" is cognizable as a due

11

1  process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d
2  1043 (1998) (citing *Rochin v. Cal.*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). The
3  threshold question in such cases is "whether the behavior of the governmental officer is so egregious,
4  so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at
5  847 n. 8. The type of conduct which is most likely to rise to the "conscience-shocking level" is
6  "conduct intended to injure in some way unjustifiable by any government interest." *Id*. at 849.
7  Conduct which was not intentional, but rather was deliberately indifferent, may nevertheless rise to the
8  conscience-shocking level in some circumstances. *Id*. at 849–50.

9    For the reasons discussed above, the Court finds that Plaintiffs have stated a Fourteenth
10  Amendment claim against Does 11-20 based on deliberate indifference. Plaintiffs have sufficiently
11  alleged that Does 11-20 acted with deliberate indifference resulting in Willard's death.

12    Plaintiffs have not stated a cognizable deliberate indifference claim against Does 1-10 and
13  therefore cannot state a Fourteenth Amendment claim against them. However, Plaintiffs have been
14  granted leave to amend their deliberate indifference claim against Does 1-10. Consistent with that
15  allowance, Plaintiffs shall be granted leave to amend their Fourteenth Amendment claim against Does
16  1-10.

17    With regard to Does 21-30, Plaintiffs have not stated a cognizable deliberate indifference claim
18  against them. As Plaintiffs have not adequately demonstrated that Does 21-30 acted with deliberate
19  indifference, they cannot demonstrate that the behavior of these defendants rises to the level of
20  deliberate or shocking to the conscience. Further leave to amend this claim is not warranted.

21    **E. Discovery of Doe Defendants**

22    Plaintiffs have requested discovery to identify the Doe defendants. Although the use of Doe
23  defendants is generally disfavored, "'the plaintiff should be given an opportunity through discovery to
24  identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or
25  that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160,
26  1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). However,
27  Federal Rule of Civil Procedure 26(d) requires a court order to initiate discovery prior to a Rule 26(f)
28  conference between the parties. See Fed. R. Civ. P. 26(d)(1). In evaluating requests for expedited

discovery, courts generally apply the good cause standard. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

To determine good cause for expedited discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity so that the court can determine that the defendant is a real person or entity who can be sued in federal court; (2) describes all previous steps taken to identify and locate the defendant; (3) establishes that the suit could withstand a motion to dismiss; and (4) establishes that the discovery requested is likely to lead to identifying information about the defendant that will permit service of process. *See*, *e.g.*, *Kechara House Buddhist Ass'n Malaysia v. Does 1-3*, 2015 WL 2399006, at *2 (N.D. Cal. May 19, 2015); *Camargo v. Miltiadous*, 2015 WL 1951799, at *2-3 (N.D. Cal. Apr. 29, 2015).

### 1. Plaintiff Identified the Missing Parties with Sufficient Specificity

Plaintiff has identified Does 1-20 with adequate specificity. Plaintiffs contend that Does 1 through 10 were California State Prison-Corcoran control booth or floor officers assigned to the unit at the time Willard was murdered on May 23, 2013. (SAC ¶ 18, 23.) Does 11 through 20 were CDCR personnel responsible for Willard's placement in a cell with Queen and provided Queen with information about Willard's commitment offense in Queen's 128 form on May 23, 2013. (SAC ¶¶ 2, 31, 48, 50.) These allegations indicate that Does 1 through 20 are real people who were employed at California State Prison-Corcoran and can be sued in federal court.

### 2. Previous Steps Taken to Identify the Doe Defendants

At this juncture, the Court does not have any information on Plaintiffs' attempts to locate or identify Does 1 through 20.

### 3. Withstanding a Motion to Dismiss

A plaintiff must establish to the court's satisfaction that the suit against defendants could withstand a motion to dismiss. "A conclusory pleading will never be sufficient to satisfy this element." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999). Thus, plaintiff must make some showing that "an act giving rise to civil liability actually occurred and that the discovery is

aimed at revealing specific identifying features of the person or entity who committed that act." *Id.* at 580.

As discussed above, Plaintiffs' suit can withstand a motion to dismiss with regard to Does 11 through 20. With respect to Does 1 through 10, Plaintiffs have been granted leave to amend to allege additional facts to state a cognizable claim.

**4. Likelihood of Identifying the Doe Defendants through Discovery**

Here, the Doe Defendants were employed by California State Prison-Corcoran and worked in Willard's housing unit on the date in question. Plaintiffs should be able to discover the names of said employees through subpoenas directed to CDCR. Additionally, Queen reportedly provided a statement to investigators after the murder, which also may provide information regarding the Doe Defendants.

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The motion to dismiss Plaintiffs' section 1983 claims against Defendants Diaz, Gipson, Perez, and Stainer is DENIED as moot;
2. Plaintiffs' second cause of action for failure to train, supervise and discipline employees is DISMISSED without leave to amend;
3. Plaintiffs' request for expedited discovery is GRANTED.
4. Discovery is opened for sixty (60) days from the date of this order solely for the purpose of identifying Does 1 through 20.
5. Plaintiffs shall file an amended complaint consistent with the above within ninety (90) from the date of this order; and
6. Failure to amend within this time frame will result in dismissal of this action.

IT IS SO ORDERED.

Dated: **July 23, 2015**          /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE